IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Timothy J. Johnson,                     )
     Petitioner,                        )
                    )
v.                                      )          **1:13cv423 (LO/IDD)**
                    )
Harold Clarke,                          )
     Respondent.                        )

<u>MEMORANDUM OPINION</u>

Timothy J. Johnson, a Virginia inmate proceeding <u>pro se</u>, has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his Circuit Court of the City of

Portsmouth convictions of sex offenses. On January 21, 2014, respondent filed a Motion to

Dismiss and Rule 5 Answer. Johnson was given the opportunity to file responsive materials,

pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and has filed a reply. For the

reasons that follow, Johnson's claims must be dismissed.

**I. Background**

Following a bench trial, the Circuit Court of the City of Portsmouth found petitioner guilty

of aggravated sexual battery, object sexual penetration, and forcible sodomy. On March 25, 2010,

the court entered its final judgment after sentencing Johnson to a total of seventy (70) years in

prison, with all but fifteen (15) years suspended:   twenty (20) for aggravated sexual battery,

twenty-five (25) years for object sexual penetration, and twenty-five (25) years for forcible

sodomy. Case No. CR08-1424. The facts underlying the convictions were described by the

Virginia Court of Appeals as follow:

> The Appellant's daughter, X.J., testified that, during an overnight stay with
> appellant in the summer of 2004, she awoke to find him kissing her breast.
> Appellant molested her for approximately thirty minutes, penetrating her vagina

with his finger and his tongue, and licking her vagina. X.J. did not provide a specific date for this incident, but testified that it occurred in her grandmother's home in July 2004 when she was ten years old. X.J. recalled that she and her younger brother stayed with their father on weeknights in the summer of 2004 at the home of Judith Kubo, appellant's mother. The children spent their weekends with their mother, Kelly Evans.

Evans learned of the incident from X.J. on Friday, July 16, 2004. Evans recalled the date specifically because it was the last day of a Boy Scout camp her son had attended. She explained that the abuse had occurred "[t]he last night that she spent the night there, which was the previous Saturday." Evans noted that she "believed" the date of the preceding Saturday was July 10, 2004.

When Evans confronted appellant the following day, he apologized and broke down in tears. Evans did not report the abuse to authorities, but suspended overnight stays with appellant and his mother for several weeks. Within a few months, overnight visitation resumed, but with the restriction that X.J. had to sleep downstairs on the couch or in her grandmother's bedroom. Prior to the incident, X.J. had sometimes slept in her father's bed, but spent most nights with her brother on the living room floor in a sleeping bag. Evans did not report the abuse to authorities until after she and appellant became embroiled in a child support and custody dispute in the summer of 2007.

Johnson v. Commonwealth, R. No. 0680-10-1 (Va. App. Oct. 20, 2010) at 1-2.

Johnson prosecuted a direct appeal, raising the sole claim that the evidence was insufficient to sustain his convictions. Id. at 1. By per curiam opinion, the Virginia Court of Appeals dismissed the petition for appeal on October 20, 2010. R. No. 0680-10-1. A three-judge panel reached the same result on February 3, 2011. Johnson sought further review by the Supreme Court of Virginia, but his petition was refused on July 5, 2011. Johnson v. Commonwealth, R. No. 110411 (Va. July 5, 2011).

On July 5, 2012, Johnson timely filed a petition for a state writ of habeas corpus in the Supreme Court of Virginia.[1] On January 17, 2013, the court dismissed Johnson's petition. Johnson

---

1 Respondent states that petitioner filed his state habeas petition on July 3, 2012. The Supreme Court of Virginia, however, stated that the petition was filed on July 5, 2012. Pursuant to Johnson v.

v. Dir., Dep't of Corr., R. No. 1415101 (Va. Jan. 17, 2013). Johnson filed the instant application for

§ 2254 relief on March 25, 2013, reiterating the same claims he raised in his state habeas

application, as follow:

I. Johnson was denied the effective assistance of counsel when:
A. Counsel advised petitioner and influenced petitioner to select a bench trial instead of a jury trial.

B. Counsel failed to clearly present the only alibi defense available to petitioner.

C. Counsel failed to challenge the hearsay evidence of Ms. Evans, a witness for the prosecution.

D. Counsel failed to move for dismissal of indictments, on the grounds of "Multiplicity and Double jeopardy."

E. Counsel failed to move the court for a Bill of Particulars.

F. Counsel rendered ineffective assistance of counsel on appeal.

II. The Trial Court Violated the Petitioner's Due Process Rights when:
A. Judge Piersali Jr. violated petitioner's Due Process rights, and abused his discretion, when he sustained the convictions contrary to the standards announced in Jackson v. Virginia, 61 L.Ed.2d 560.

B. Judge Piersali Jr. committed reversible error when he sustained the conviction against the petitioner for "aggravated sexual battery," though the evidence pointed to a "lesser crime."

C. Judge Piersali Jr.'s decision to sustain the conviction for object penetration was plainly wrong and did violate petitioner's 5th Amendment rights to the U.S. Constitution.

D. Judge Pisrsal Jr. committed revisable error when he failed to recuse himself; and discriminated and prejudiced the petitioner because of Judge Piersali's "Life-Time commitment to the fight against abused and sexually exploited children, while sitting in judgment on the Portsmouth's City Juvenile and Domestic Court, for over twenty-five years."

---

McCaughtry, we are bound to adopt the Supreme Court's finding. See 265 F. 3d 559, 564 (7th Cir. 2001) (holding that a federal court determines whether a petition is properly filed by "looking at how the state courts treated it"). Notably, this two-day discrepancy does not affect the Court's calculation of whether the instant petition was timely filed.

On January 21, 2014, respondent filed a Rule 5 Answer and a Motion to Dismiss, along with a supporting brief and exhibits. Petitioner filed a reply on February 26, 2014. Accordingly, the petition is now ripe for disposition.

## II. Timeliness

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence.   28 U.S.C. § 2244(d)(1)(A)-(D).   Johnson's convictions became final on October 3, 2011, the last date he could have petitioned the Supreme Court of the United States for a writ of certiorari after the Supreme Court of Virginia refused his direct appeal on July 5, 2011.

In calculating the AEDPA limitations period, the Court generally must exclude the time during which state collateral proceedings pursued by a petitioner were pending.   See 28 U.S.C. § 2244(d)(2);   Pace v. DiGuglielmo, 544 U.S. 408 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Johnson commenced his first post-conviction proceeding on July 5, 2012, when he filed his petition for a state writ of habeas corpus in the Supreme Court of Virginia. The Supreme Court dismissed the petition on January 17, 2013.

Johnson then filed the instant petition on or about March 25, 2013. By order dated April 30, 2013, Johnson's request to proceed in forma pauperis was conditionally granted and his place of incarceration was directed to provide an Inmate Account Report Form, to assist the Court in determining whether Johnson qualified to proceed in forma pauperis. His institution complied on

4

May 21, 2013. By Order dated June 4, 2013, his application to proceed in forma pauperis was denied and his petition was dismissed, without prejudice and with leave to submit to this Court the $5.00 filing fee required by 28 U.S.C. § 1914(a). In that Order the Court stated "[s]hould petitioner submit the full filing fee within thirty (30) days, the Clerk shall reopen the petition." Docket no. 5. Johnson submitted the filing fee no later than June 24, 2013, and the clerk reopened Johnson's petition the same day, per the Court's instructions in the June 4, 2013 Order. On November 25, 2013, the Court entered an order reopening the case and requiring the respondent to show cause why the writ should not be granted.

Between October 3, 2011, the date petitioner's conviction became final, and July 5, 2012, the date petitioner filed his state habeas petition, 276 days passed. Between January 17, 2013, the date the denial of petitioner's state habeas petition became final, and March 25, 2013, the date petitioner filed his federal petition, an additional 67 days passed. When these days are combined, it shows that Johnson filed his federal petition twenty-two (22) days before the statute of limitations ran.

The respondent contests this calculation and argues that Johnson filed his petition on March 28, 2013, the date of mailing on Johnson's envelope. Further, respondent argues that a period of 20 days elapsed between June 4, 2013, the date the Court dismissed the petition, and June 24, 2014, the date the Court received Johnson's filing fee. Respondent argues that the statute of limitations was not tolled during this period. Respondent also argues that the Court's order reopening the case was entered November 25, 2013 and when this "period of time [is] added . . . it appears the statute of limitation expired during the time the petition was dismissed and before the filing fee was received and the petition refiled." Mem. Supp. Mot. Dismiss 5; Docket No. 10. Johnson responds by stating that "once [he] put [sic] all of the necessary forms into the hands of

5

the Prison; such in and of [itself] is sufficient for prisoners." Pet'r's Resp 2; Docket # 15.

For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his pleading to prison officials for mailing. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). In his original filings, petitioner did not include the date that he placed his petition in the prison mailing system. He does, however, date his petition as being executed on March 25, 2013. The date on his mailing envelope is March 28, 2013. The Court received the petition on April 1, 2013. Absent evidence to the contrary, the Court presumes that a petition is placed in the prison mailing system on the date it is executed. Here, then, as no contrary evidence has been supplied, it is assumed that the petition was filed on March 25, 2013.

Though the Court dismissed Johnson's petition on June 4, 2013, that Order explicitly stated that should Johnson submit the full filing fee within thirty (30) days, the Clerk would reopen the petition, which the Clerk timely did on June 24, 2013, after receiving Johnson's filing fee.[2] As such, the petition is timely filed.

Respondent argues that Johnson's case "presents no grounds for being retained on the Court's docket while petitioner perfected his petition" and cites Rhines v. Weber, 544 U.S. 269, 276 (2005) in support. In Rhines, the Court held that a district court has discretion to stay a mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition. 544 U.S. at 271, 278. Though exhaustion is not in issue in the instant petition because respondent concedes that Johnson exhausted all his claims, see Mem. Supp. Mot. Dismiss 7, respondent argues Johnson's petition is

---

2 While this is on the docket, it was docketed for viewing by the Court only and was not publicly seen until the Court entered its November 25, 2013 Order.

analogous because it was not perfected when Johnson failed to pay the $5.00 filing fee.

Respondent argues that Johnson's petition was not *properly* filed because he did not pay the filing fee and thus Johnson's petition should not be tolled for the time period between January 17, 2013, the date the Supreme Court of Virginia denied his state habeas petition, and June 24, 2013, the day on which the Court received his filing fee. In support respondent cites Artuz v. Bennett, 531 U.S. 4, (2000). The Artuz Court held that an "application for state postconviction relief containing claims that are procedurally barred is 'properly filed' within the meaning of" 28 U.S.C. § 2244(d)(2). 531 U.S. at 5, 8. In reaching that conclusion the Court held that an application is "'*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Id. at 8 (emphasis in original). The Court noted that these applicable laws and rules "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id.

Here, Johnson met these requirements when he timely complied with this Court's order requiring him to pay the $5.00 filing fee within thirty days of the Court's Order. When Johnson did so, the clerk reopened – not refiled – his petition. The reopened petition was deemed filed on the day he placed it in the prison mailing system, pursuant to Lewis, 947 F.2d at 733. As such, his petition is timely.[3]

### III. Procedural Default

On federal habeas corpus review, a state court's finding of procedural default is entitled to a presumption of correctness, Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28

---

3 Respondent also argues that "Federal Rule of Civil Procedure 4(j) does not give petitioner a right to refile without the consequences of time defenses." Id. at 5. "Under Rule 4 (j), if a plaintiff is not diligent and fails to serve the complaint within 120 days or such further time period as ordered by the court for good cause, the case shall be dismissed without prejudice." Mendez v. Elliott, 45 F.3d 75, 78 (4th Cir. 1995). Service, however, is not in issue here but whether Johnson timely filed his petition.

U.S.C. § 2254(d)), provided two foundational requirements are met. Harris v. Reed, 489 U.S. 255, 262-63 (1989). First, the state court must have relied explicitly on the procedural ground to deny petitioner relief. Id. Second, the state procedural rule relied on to default petitioner's claim must be an independent and adequate state ground for denying relief. Id. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. Based upon these principles, petitioner's claims II(A)-(D) are procedurally barred from federal review.

When Johnson raised his claims II(A)-(D) in his state habeas corpus application, the Supreme Court of Virginia expressly found them to be defaulted pursuant to Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680 (1974), cert. denied, 419 U.S. 1108 (1975) as "non-jurisdictional issues [that] could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus." Johnson v. Dir. Dep't Corr., R. No. 121153, 7 (Va. Jan. 17, 2013). The Fourth Circuit has consistently held that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Therefore, as respondent argues, the Virginia court's express finding that Slayton barred review of claims II(A)-(D) also precludes federal review of those claims. Clanton, 845 F.2d at 1241.

A federal court may not review a procedurally barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim.   See Coleman, 501 U.S. at 753-54; Clozza v.

8

Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42. Importantly, a court

need not consider the issue of prejudice in the absence of cause. Kornahrens v. Evatt, 66 F.3d

1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

In his response to counsel's Motion to Dismiss, petitioner does not address his procedural

default. Dkt. no. 15. Therefore, petitioner has made no showing of cause and prejudice or a

fundamental miscarriage of justice and claims II.(A). – (D) are procedurally barred from

consideration on the merits.

### IV. Standard of Review

Where a state court has addressed the merits of a claim raised in a federal habeas petition, a

federal court may not grant habeas relief unless the state court's adjudication is contrary to, or an

unreasonable application of, clearly established federal law, or is based on an unreasonable

determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is

"contrary to" or "an unreasonable application of" federal law is based on an independent review of

each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination meets

the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States

Supreme] Court on a question of law or if the state court decides a case differently than [the United

States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413.

Under the "unreasonable application" clause, the writ should be granted if the federal court finds

that the state court "identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Moreover,

this standard of reasonableness is an objective one. Id. at 410.

### V. Analysis

In all of his federally-cognizable claims, petitioner asserts that he received ineffective

9

assistance of counsel for various reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. at 668 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

　　To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this respect, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice.

10

See Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

1. Claim I.A.

In claim I.A., Johnson alleges that his trial counsel's advice to waive a jury trial denied him

the effective assistance of counsel. Pet. 10. Specifically, Johnson contends that "counsel should not

have agreed with the prosecution and chosen Judge Piersall, Jr. as the fact finder in this particular

case" because Judge Piersall was biased as seen by the "25 years of his life dedicated to endeavoring

to keep children from sexual abuse and exploitation." Id. When Johnson raised this claim in his state

habeas petition, the Supreme Court of Virginia ruled as follows:

> [C]laim (I)(A) satisfies neither the "performance" nor the "prejudice" prong of the
> two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984).
> Petitioner fails to explain how the judge's comments regarding the difficulty
> involved in deciding child sexual abuse cases made at the end of the trial demonstrate
> counsel was ineffective for advising petitioner to waive his right to a jury trial.
> Moreover, petitioner does not argue that a jury trial would have resulted in a more
> favorable outcome. Thus, petitioner has failed to demonstrate that counsel's
> performance was deficient or that there is a reasonable probability that, but for
> counsel's alleged errors, the result of the proceeding would have been different.

Johnson v. Dir. Dep't Corr., R. No. 121153, 1-2 (Va. Jan. 17, 2013).

"Where a defendant, fully informed of the reasonable options before him, agrees to follow a

particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective

assistance of counsel." United States v. Weaver, 882 F.2d 1128, 1140 (7th Cir. 1989). "To allow that

would be to exempt defendants from the consequences of their actions at trial and would debase the

right to effective assistance of counsel enshrined in the sixth amendment." Weaver, 882 F.2d at

1140. Under these principals, Johnson's claim I.A. must be dismissed because he was reasonably

informed of his choice between a jury trial versus a bench trial and made a strategic and "knowing,

intelligent, and voluntary waiver of his right to a trial by jury." Resp't's State Habeas Ex. A at 2

(Johnson's executed waiver of jury trial). Moreover, there is no indication that the outcome of the

11

proceeding would have been different had petitioner been tried by a jury. As such, the state court's

rejection of Johnson's present claim was neither contrary to clearly established federal law nor

based on an unreasonable determination of the facts. Therefore this claim will be dismissed. See

Williams, 529 U.S. at 412-13.

2. Claim I.B.

Johnson alleges that his trial counsel denied him the effective assistance of counsel when his

attorney failed to present "the only alibi evidence available." Pet. 11. Specifically, Johnson asserts

that counsel "failed to proffer questions and answers . . . from [him]" that would have shown he was

"not at the scene." Id. He then argues that counsel failed to "adequately" examine his mother, "who

was a witness and in whose home the alleged crime" occurred. Id. Johnson argues his alibi evidence

would "as a matter of law . . . have raised a reasonable doubt." Id.

When Johnson raised this claim in his state habeas petition, the Supreme Court of Virginia ruled as

follows[4]:

> The Court holds that this portion of claim (I)(B) [that alleges trial counsel presented
> no meaningful defense theory] satisfies neither the "performance" nor the
> "prejudice" prong of the two-part test enunciated in Strickland. The record, including
> the trial transcript and affidavit of counsel, demonstrates that counsel's theory of the
> case was that petitioner could not have committed these crimes because the victim
> was not in the place she alleged the crimes occurred on the date and time she alleged
> they occurred. Counsel attempted to show, through the testimony of petitioner and
> his mother, that the victim was not at petitioner's mother's house on Saturday, July
> 10, 2004, that the victim had a close father-daughter relationship, that no one
> observed any change in the victim's behavior after July 10, 2004, and that although
> the victim's mother testified the victim told her of the incident on July 16, 2004, the
> victim's mother did not report the incident to the police until 2007, when she and
> petitioner became embroiled in a child custody and support dispute. Thus, petitioner
> has failed to demonstrate that counsel's performance was deficient or that there is a

---

4 The Supreme Court of Virginia treated Johnson's allegations in his claim IB as separate
unnumbered claims. As such, both portions of the Supreme Court of Virginia's denial of this claim
is quoted above.

reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

. . .

[C]laim (I)(B) is factually without merit. The record, including the trial transcript, shows that petitioner's mother was examined on this point and did, in fact, testify that the victim was not at her home when the crimes were alleged to have occurred.

Johnson, R. No. 121153 at 3-4.

Regarding Johnson's arguments about not being "proffered questions," which would have allowed him to testify that he was not at home on the night of the incident, Johnson offered no affidavits to demonstrate what favorable evidence or testimony the allegedly missing testimony would have produced at his trial. The Supreme Court of Virginia's denial of relief on petitioners' claim that counsel was ineffective for failing to conduct further cross examination or direct-examination of himself was thus both factually reasonable and in accord with controlling federal authorities. Therefore, the same result must be reached here. Williams, 529 U.S. at 412 - 13. Therefore, this claim must be dismissed.

Regarding petitioner's argument about his attorney's cross examination of his mother, it is well established in federal jurisprudence that "'strategic choices made [by counsel] after thorough investigation . . . are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 129 S. Ct. 1579 (2009), quoting Strickland, 446 U.S. at 690-91. Further, whether and how to examine a witness is quintessentially a matter of trial tactics that may not be second-guessed on collateral review. Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978); Cardwell v. Netherland, 971 F. Supp. 997, 1022 (E.D. Va. 1997); see also United States v. Clayborne, 509 F.2d 473, 479 (D.C. Cir.

1974) ("knowing when not to cross-examine an adverse witness is the art of cross-examination at its

highest").

Here, petitioner's arguments are wholly without merit. The record shows that Johnson's trial

counsel, Mr. Andrews, did examine his mother, Judith Kubo, about the children not being home on

the night of the alleged incident:

> Mr. Andrews: Once again, how do you know the kids did not stay there on July 10, 2004?
>
> Ms. Kubo: Because they did not stay on weekends during the summer of 2004.
>
> Mr. Andrews: Well, specifically what was it about July 9, 2004 and this item in particular?
>
> Ms. Kubo: That was on a Friday and that was my birthday and they had to hurry and get it ready because they didn't – just like kids they waited until the last minute to get it ready.
>
> Mr. Andrews: When you say they, who are you referring to?
>
> Ms. Kubo: I'm referring to X.J. and [her brother]. When they gave it to me, they had just painted it and the paint was still tacky, sticky, and so they brought it to me on a piece of newspaper and they were holding it by the edges so I still couldn't touch it. But I have a habit of things that mean something to me of writing the date on the bottom so I will remember when I get it, so I wrote the date on the bottom of this, which is July 9, 2004, which was a Friday, and they gave it to me just before – well, not long before their mother picked them up.

Tr. 101-102.

Johnson's own argument acknowledges that his trial counsel did cross-examine his mother.

While Johnson attempts to argue that his counsel's cross-examination of was not "adequate" and

denied him his only alibi defense evidence, this is not supported by the record.

Thus, the state court's rejection of this claim was not contrary to, or an unreasonable application of

federal law, nor was it based on an unreasonable determination of the facts. Williams, 529 U.S. at

412–13.   Therefore, this claim will be dismissed.

14

3. Claim I.C.

In claim I.C., Johnson alleges that his trial counsel failed to challenge the admission of hearsay evidence by Commonwealth witness "Evans." Pet. 12. Specifically, petitioner argues that Evans only learned of Johnson's sexual battery through statements Evans's daughter made to a friend. Id. He argues that the testimony was used "to prove the date, time, and try to give validity and credibility" to the victim's statement that her stepfather sexually assaulted her. Id. He asserts that the testimony was "extremely prejudicial to petitioner," and that counsel "enhanced the prejudice by failing to challenge the admissibility of this untimely evidence." Id. When Johnson raised this claim in his state habeas petition, the Supreme Court of Virginia ruled as follows:

> [C]laim (I)(C) is factually without merit. The record demonstrates that the victim's mother testified the victim told her that petitioner had inappropriately touched her the last time she spent the night with petitioner. The record reveals that the victim's complaint to her mother was six days after the incident. Thus, the only hearsay to which the victim's mother testified was admissible to corroborate the testimony of the victim under the recent complaint hearsay exception of Code § 19.2-268.2.

Johnson, R. No. 121153 at 4-5.

"A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus," Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) (citing Estelle v. McGuire, 502 U.S. 62, 67–68 (1991)). As the Supreme Court of Virginia interpreted Virginia state law to conclude that there was no error in admitting Evans's testimony, there can be no second-guessing the Supreme Court of Virginia. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Thus, the state court's rejection of this claim was not contrary to, or an unreasonable application of federal law, cf. Strickland, supra, nor was it based on an unreasonable determination of the facts. Williams, 529 U.S. at 412–13.   Therefore, this claim will be dismissed.

15

4. Claim I.D.

In claim I.D., Johnson alleges that "counsel did prejudice his defense, when he chose not to challenge the introduction of an defective [sic] indictment." Pet. 13. Specifically, Johnson contends that the indictment was:

> insufficiently definite and certain . . . prejudicial to petitioner's right to notice of the charges against him . . . altered the availability of petitioner's defense acess [sic] to evidence . . . added a theory, a crime, and [an] element that all three elements that were noted; could not have satisfied [sic] . . . [and] all the indictments gave the appearance that petitioner had committed the alleged crimes over a period of approximately (30) thirty days period [sic].

Id. at 14. He argues that had his counsel "rightfully challenged the prejudicial evidence as were presented to the court[] 'petitioner would have been found not guilty of all the indictments against him." Id. When Johnson raised this claim in his state habeas petition, the Supreme Court of Virginia ruled as follows:

> [C]laim (I)(D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the manuscript record and trial transcript, demonstrates that petitioner understood his charges, he had discussed the charges with counsel, and had discussed with counsel the possible defenses he might have to the charges. Each indictment complied with the requirements of § 19.2-220, including the requirement that the indictment recite that the accused committed the offense on or about a certain date, and each of the indictments charged a different statutory offense. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Johnson, R. No. 121153 at 5.

For the reasons which are clearly stated in the foregoing opinion by the Supreme Court of Virginia, Johnson has failed to carry his burden to demonstrate that his attorney's failure to challenge his indictments amounted to ineffective assistance. Review of the trial transcript reveals that, as the Virginia court determined, Johnson reviewed the charges in the indictments and

understood the charges against him. Therefore, that Court's rejection of claim I.D. was both

factually reasonable and in accord with Strickland, supra, and the claim likewise must fail here.

Williams, 529 U.S. at 412-13.

5. Claim I.E.

Johnson alleges that "counsel failed to move the trial court to have the prosecution produce a

'bill of particulars' to allow the petitioner to know the specific date of the crimes alleged and the

time and place and witnesses against him." Pet. 15. Specifically, Johnson argues that had his counsel

moved for a bill of particulars "this would have bound the prosecution and the trial court to one

particular incident of which the petitioner had to defend against at trial." Id. He asserts that "had

counsel not acted unreasonable [sic], the petitioner would have prevailed on the motion for [a] 'Bill

of Particulars' and the out-come [sic] would have been different." Id. When Johnson raised this

claim in his state habeas petition, the Supreme Court of Virginia ruled as follows:

> [C]laim (I)(E) satisfies neither the "performance" nor the "prejudice" prong of the
> two-part test enunciated in Strickland. The record, including the affidavit submitted
> by counsel, reveals that there had been a preliminary hearing in the case and the
> Commonwealth responded to counsel's motion for discovery. Moreover, the record
> reveals that the indictments complied with Code §§ 19.2-220 and 19.2-221 and, thus,
> adequately advised petitioner of the cause and nature of the accusations lodged
> against him. Thus, petitioner has failed to demonstrate that counsel's performance
> was deficient or that there is a reasonable probability that, but for counsel's alleged
> errors, the result of the proceeding would have been different.

Johnson, R. No. 121153 at 6.

For the reasons expressed in the state court's order, its rejection of Johnson's present claim

was neither contrary to clearly established federal law nor based on an unreasonable determination

of the facts. Therefore this claim will be dismissed. See Williams, 529 U.S. at 412-13.

6. Claim I.F.

Johnson alleges that his right to appellate counsel was violated "because counsel did violate

17

petitioner's constitutional right to effective assistance of counsel which extends to the first appeal as a right also." Pet. 16. He then contends that:

> In a criminal trial where the defendant is facing the possible sentence of 'Double Life" + 40 years, it is only deficient performance that an attorney would defend his client out-side the standard announced in Strickland; by way of an one page argument [sic].
>
> There was no D.N.A. evidence, this was an Sex crime case; the only witness was under the age of "fifteen" years old; and the crime was not reported for over (4) years; The mother of the purported victim didn't tell anyone of the crime, until she was involved in an custody dispute.
>
> In this instant case "there was constructive denial" of effective assistance of counsel, in violating petitioner's 6th Amendment rights. But for counsel's gross performance, petitioner would have prevailed on appeal, for appeal purposes, and would have been found not guilty.

Id. When Johnson raised this claim in his state habeas petition, the Supreme Court of Virginia ruled as follows:

> [C]laim (I)(F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983).

Johnson v. Dir. Dep't Corr., R. No. 121153, 6-7 (Va. Jan. 17, 2013).

Johnson fails to allege what specific acts of his trial and appellate counsel denied him effective assistance or how this alleged ineffectiveness meets the prejudice prong of the Strickland analysis.[5] As such, his conclusory allegations do not entitle him to relief. See Habeas Corpus Rule 2(c) ("The petition . . . shall specify all the grounds for relief which are available to the petitioner . . . and shall set forth in summary form the facts supporting each of the grounds thus specified");

---

5 If petitioner is attempting to argue that the aggregate effects of his counsel's errors denied him the effective assistance of counsel, this argument is foreclosed by Fisher v. Angelone. 163 F.3d 835, 854 (4th Cir. 1998) (holding that "ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively").

18

Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). Accordingly, this will claim will be dismissed.

## V.   Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition for habeas corpus relief will be granted, and the petition will be dismissed with prejudice. An appropriate Order shall issue.

Entered this ___23rd___ day of _____July_____ 2014.

Alexandria, Virginia
_____/s/_____
Liam O'Grady
United States District Judge

19